### 1138. MONAHAN *v.* NATIONAL REALTY COMPANY.

1. A landlord is liable for defects in the original construction of a building, whether he knows of them or not. And where he retains a qualified possession and general supervision of his building, he may also be held liable for injuries arising from failure to maintain the building in proper repair, either if he knew of the defects or if, in the exercise of ordinary care, he should have known of them.

2. In an action brought to recover for injuries due to the defective construction of a building, evidence as to the condition of the building at the time of the casualty may be admissible for the purpose of illustrating that the construction of the building was originally defective, and to show that the immunity which a landlord may ordinarily claim, upon the ground that he exercised due care in obtaining the advice of experts, has been withdrawn by reason of the facts that he had had ample notice (from actual physical conditions, brought to his attention or to that of his agents) that the construction was improper in the first instance.

3. The maxim res ipsa loquitur is simply a rule of evidence; and whether, under a given state of facts, the maxim is to be applied is an inference to be reached by the jury, and not by the court.   In a case where one, himself in the exercise of due care, sustains an injury which is primarily traceable to the operation of some portion of a building, and the casualty is of a kind which does not ordinarily occur where a building has been properly constructed, a jury may be authorized to infer that the resultant injury was due to original defective construction. The duty of proper construction, devolving upon a landlord, is an absolute duty; he is especially charged with knowledge of the character of a building constructed by him; and where injury caused by an appliance of the building results to one properly invited by a tenant into the building, negligence is prima facie attributable to the landlord.

4. Where the only objection made to the introduction of evidence is that it is irrelevant to illustrate a certain issue, it is not error to overrule this objection, if the evidence is relevant to any other issue in the case and if no objection is made to the competency of such evidence. Although testimony may be incompetent, it need not be excluded upon that ground, unless that objection be specially raised.

5. From knowledge of the existence of a present condition, knowledge of the existence of the same condition in the past may sometimes be implied.

6. One may be liable for the result of a hidden defect, as well as for injurious consequences of a patent defect, unless he did not know or, in the exercise of due care, ought not to have known of such latent defect. A landlord is liable for a defect of construction, latent or otherwise, the existence of which he knew or ought to have known.

7. Construction which is not strong enough to stand the strain of ordinary use is defective construction.

8. Where the judge who presided at the trial of the case did not hear the motion for a new trial, but it was heard by his successor, the rule with reference to the weight of the opinion of the trial judge upon the facts has no application; nor has a judge who did not try the cause originally that discretion, in relation to the grant or refusal of a new trial upon the evidence, with which an appellate court is reluctant to interfere.

Action for damages, from city court of Savannah—Judge Freeman. February 12, 1908.

Argued June 30,—Decided August 4, 1908.

*Osborne & Lawrence, Oliver & Oliver,* for plaintiff.

*O'Connor, O'Byrne & Hartridge,* for defendant.

RUSSELL, J. The plaintiff in error, Mrs. Monahan, brought an action against the National Realty Company, a corporation owning and operating an office building in the city of Savannah, to recover damages for an injury to her hand. The petition alleges, that Mrs. Monahan went to the office of a dentist in the defendant's building to be treated; that while there, the annual policemen's parade passed by, and that she raised one of the windows to look at the parade, and, when she raised the window, the chains which supported the sash broke and fell upon her hand, injuring it; that she did not know and could not, by ordinary care, have known of the size and weakness of the chains; that the defendant could, by the exercise of ordinary care, have known of the weakness of the chains, and did, in fact, know of it, and further knew that the occupants and visitors to the office in the defendant's building went to the windows for the purpose of looking out, and especially when

public parades were passing. The allegations which are especially material to be considered are those in paragraphs seven and twelve, which are as follows: 7. "That the window was caused to fall by reason of the fact that the chains which supported the sash in the lifts were too light to serve the purpose for which they were being used at the time and place aforesaid. Said chains, being too light and small to sustain the weight of the window, broke and caused the window to fall with full force upon petitioner's said wrist, causing the injury aforesaid." This paragraph was amended by adding the following: "The defendant knew that said chains were too light, weak, and small for the purpose intended when they were put in the windows in said building. The construction of the building was originally defective, in that the said chains were light, small, and weak. By the exercise of ordinary care at the time said chains were put in the building, defendant could have known that they were too light, small, and weak for the purpose to which they were put. The building was constructed by the National Realty Company and under its supervision." 12. "The defendant was negligent as follows: In *keeping* and *maintaining* a chain which was too light for the purposes for which it was intended to serve. Said chain was too light to sustain the weight of the window when raised. Said defendant knew that the chains were too light to bear the strain upon them when the window was open. Said defendant ought to have known, in the exercise of ordinary care, that said chains were too light to bear the strain upon them when the windows were open. All of these acts of negligence concurred in producing the injury aforesaid."

From the evidence it appears that Dr. Osborne, a dentist, rented an office from the defendant. The defendant did not part with possession of its building. It kept a superintendent who looked after the building and had charge of making repairs to the same. It also furnished the .tenants with ice water and porter service, including the care and cleaning of windows. On the date in question the plaintiff went to Dr. Osborne's office to be treated. While in the office the policemen's annual parade passed and Mrs. Monahan went to one of the windows to look out. It appeared that it was customary for the windows to be so used when parades were passing. When raised, the chains which supported the window broke, and the sash fell and severely injured her hand. Dr. Osborne testified, that

Mr. Campos, the superintendent of the building, told him that the window chains had been breaking all over the building, and that he had been repairing them, and had used up a second roll of 500 feet of chain in making the repairs.   He stated to Dr. Osborne that the reason the chains broke was that they were "too light."   Campos, when put upon the stand, did not deny this statement.   He said: "I told Dr. Osborne that morning that there was a great many of the windows broken by men cleaning them, revolving windows, jerking them up and down; they would break the chain, and whenever we took a sash out we replaced the chains on both sides of the sash, whether they were broken or not."   The defendant put upon the stand the architect who designed the building.   He testified, that the chains used in the windows were of the kind in ordinary use and were a good grade of chain, that a Mr. Moxson, who worked under him, had tested the windows after they were put in and after the building was constructed.   He also testified that Mr. Campos had nothing to do with the construction of the building, but was employed by the defendant a short time before the building was completed, so as to familarize himself with the details about the building.   Moxson testified, that he was employed in the construction of the building; that the chains were of a kind in general use and were reasonably suited for the purposes intended; that he inspected the windows after they were put in and found them all right.   His testimony showed, however, that the only inspection was for the purpose to see if the windows, when moved up and down, worked all right.   He made no test as to the tensile strength of the particular chains.

The jury returned a verdict for the plaintiff, for $250.   The case was tried before his honor Thomas M. Norwood, and the rule nisi upon the motion for a new trial was issued by him.   This original motion for a new trial was based upon the grounds that the verdict was contrary to evidence, against the weight of evidence, and contrary to law.   Judge Norwood's term of office having expired, Honorable Davis Freeman, who succeeded him as judge, allowed the amendment to the original motion, and, upon the hearing, sustained the motion and ordered a new trial; and to this judgment the plaintiff in error brings her writ of error.

The questions which are presented for our consideration by the record are, whether the evidence, under the pleadings in the case,

authorized the verdict rendered; whether the court erred in admitting the testimony to which exception is taken in the amended motion for new trial; and whether the court erred in qualifying the request of the defendant's counsel, by defining to the jury what was meant by defective condition of the window chains, by instructing them that such chains would be defective if they were not strong enough to sustain the strain to which they would be subjected by ordinary use. The court also refused the request preferred by the defendant's counsel, to the effect that the defendant would not be liable if the chains broke from a hidden defect.

It is unnecessary for us to determine whether the allegations in the 12th paragraph of the petition, which are quoted above, would constitute, with the allegations of the 7th paragraph, also set forth, a cause of action for failure to keep the building in repair, as insisted by counsel for plaintiff in error, or whether the right of action under the petition is restricted (as seems to have been the opinion of the trial judge) to a right to recover for original defective construction alone; for the reason that we think that, even if the allegations of the petition be construed in a more restricted sense, the plaintiff was entitled to recover.

In the motion for a new trial it is assigned as error that the court admitted evidence of an admission of the defendant's superintendent that the reason that the chain broke was because it was too light, that windows had been breaking all over the building and he had been repairing the same, and that he was then on the second roll of 500 feet of chain used in making repairs. It is undisputed, in the evidence, that the person who is said to have made this admission was the defendant's superintendent and in general charge of the building; and when he was placed upon the stand as a witness he practically admitted the entire statement which had been attributed to him, and testified to the truth of the facts therein related. If, therefore, there was any error in the admission of the statement primarily, it was cured by the introduction later of the higher testimony. Viewing the contents of this evidence, it may be remarked that where it is shown that the owner of a building, constructed presumably with all proper care and under advice supposed to be competent, has brought to his attention facts and circumstances which must bring home the conclusion that the building, in spite of all his care, has been, in some respects at least,

defectively constructed, not only is he thereafter charged with knowledge that the building is, in these respects, of defective construction, but, regardless of his original lack of knowledge, physical evidence of defects at the time of the accident may have real probative value in establishing that the building was in fact originally defectively constructed. For instance, if, a year or two after a building has been constructed (where there has been no settling of the walls and no portion of them has veered or cracked), a window sash could not be raised, because the window frame was not plumb, or a door could not be shut, owing to the fact that the door frame would not fit, it might be demonstrative of the fact that either the door or the window, or both, were originally defectively constructed. It would probably be convincing evidence. The substantive facts testified to by Mr. Campos were circumstances tending to show original defective construction. His admission was competent, in our opinion, to charge his principal with knowledge of these facts.

It made no difference, however, whether the defendant knew, when the building was being constructed, that the chains were too light and weak, or not. It was the defendant's absolute duty to know whether the construction was defective or not. Defective construction is misfeasance, and where there is absolute misfeasance the party guilty thereof is ipso facto chargeable with knowledge. See *Mayor of Brunswick* v. *Braxton,* 70 *Ga.* 193. Under §3118 of the Civil Code, which is a mere codification of the principles laid down in *White* v. *Montgomery,* 58 *Ga.* 204, and *Friedenburg* v. *Jones,* 63 *Ga.* 614, a landlord is responsible to third persons both for damage arising from defective construction and for damage arising from failure to keep the premises in repair. As to positive misfeasance in construction, he is subject to the same rule which is announced in *Mayor of Brunswick* v. *Braxton,* supra. As far as keeping up repairs is concerned, the landlord should have notice of the necessity for repairs, where the possession of the premises is exclusively in tenants. In the present instance, however, the landlord retained a qualified possession of the entire building and exercised a general supervision over each room; and it is for this reason that we heretofore remarked that notice as to the necessity of repairs or alteration of the window chains was unnecessary. We have held that it was immaterial that the action was both for damages resulting from defective construction of the building and for

·damages resulting from failure to keep the premises in repair, be-·cause we consider it well settled that a landlord is liable for defects ·in the original construction of a building, whether he knows of them ·or not.

As to the damages which may be recovered where there is a failure ·to keep the premises in repair and where the landlord has parted ·with the possession, notice of the defective condition of the premises must, of course, be brought home to the landlord; and hence it was held in *Ocean Steamship Co.* v. *Hamilton,* 112 *Ga.* 903 (38 S. E. 204), that the landlord was "not liable because of a failure to repair a defect of which he neither knew nor ought, in the exercise of rea-·sonable diligence, to have known." The case of *Slack* v. *Harris,* 111 *Ga.* 149 (36 S. E. 615), is also a case where liability was insisted on ·upon the ground that there was a failure of the landlord to keep the ·premises in repair, and the point decided was that liability results ·not only where a landlord has actual notice, but where the circum-stances are such as to require him to make an investigation which would result in discovery of the defects.

We are further of the opinion that the court did not err in the ·admission of the testimony of which complaint is made, for the rea-son that if the chains were too light and weak to sustain the weight ·of the sashes at the time of the casualty, this would be a circum-·stance from which the jury might infer that they were originally too light and weak. Of course, we do not mean to say that it might not rather be inferred, if there was testimony to that effect, that the weakness or insufficiency of the chains at the time of the accident was not due to wear or usage; but the jury would have the right to say to which cause the insufficiency of the chains at the time of the accident was due; and in a case where the building had ·only been constructed, as in the present instance, for a short time, we think the jury would be authorized to say that the insufficiency ·of the window chains was not due to long usage and consequent loss of strength, but rather that they were originally too weak for the purpose intended. It may be asserted, as a general rule, that in an action brought to recover for injuries due to the defective ·construction of a building, evidence as to the condition of a building ·at the time of the casualty is admissible for the purpose of illus-·trating that the construction of the building was originally defective, ·and to show that the immunity which a landlord may ordinarily

claim, upon the ground that he exercised due care in obtaining the advice of experts, has been withdrawn by reason of the fact that he had ample notice (from actual physical conditions brought to his attention or to that of his agents) that the construction was improper in the first instance.

In our opinion, it could not be safely held by the trial judge, nor by this court, that the jury were not authorized to apply the maxim res ipsa loquitur. Of course, as remarked by Justice Cobb in *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (47 S. E. 329), this rule is to be applied with great caution; and it is, after all, merely a rule of evidence, to be used by the jury for their guidance in arriving at the truth. In the present case, there was a heavy window in a new building, which fell, certainly without any fault of the plaintiff, and, according to some of the testimony, without any apparent cause. In determining whether it was an accident for which no one would be liable, or whether it was due to negligence on the part of the landlord in the original construction of the building, it is to be borne in mind that where injury is shown, and it is also shown that the party injured was free from fault, and there is no proof of any external cause, a prima facie case of negligence may be raised, because the party managing or controlling the agency which created the injury is naturally the one responsible, and the burden is thereby placed upon the defendant to show proper original construction. *Chenall* v. *Palmer Brick Co.,* 117 *Ga.* 106 (43 S. E. 443). Whether the explanation that the chains used in the windows in the defendant company's building were improved appliances, similar to those used in two other modern buildings in the city of Savannah, was sufficient to rebut the inference of negligence in construction, due to the unaccountable fall of the window in question, which was reinforced by evidence of continual recurrence of similar accidents all over the building and the fact that there was never any test of the tensile strength of the window chains, was a question for the jury.

We can not say that the jury erred, whether they applied the doctrine of res ipsa loquitur or not. The remaining questions presented are so fully dealt with in the headnotes as to require no further elaboration.                    *Judgment reversed.*